IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SCP HOLDINGS, LLC ) | CASE NO.: |
| 18180 Rockside Road ) | |
| Bedford, Ohio 44146 ) | JUDGE |
| ) | |
|     Plaintiff, ) | MAGISTRATE |
| ) | |
| v. ) | |
| ) | |
| JORNS & ASSOCIATES LLC ) | |
| c/o Registered Agents, Inc., Statutory Agent ) | |
| 6545 Market Ave. North Ste. 100 ) | |
| North Canton, Ohio 44721 ) | |
| ) | |
|     Defendant. ) | |

**COMPLAINT**

1.    Plaintiff SCP Holdings, LLC ("SCP") is a limited liability company formed under the laws of the State of Ohio, having its principal place of business in Bedford, Ohio, Cuyahoga County, and all members of SCP are residents of Ohio in this judicial district.

2.    Defendant Jorns & Associates LLC ("Jorns") is a limited liability company formed under the laws of the State of Wyoming, registered to do business in the State of Ohio as a foreign limited liability company, and having offices located in, among other places, Akron, Ohio.

**JURISDICTION AND VENUE**

3.    This is a dispute between citizens of different states. The amount in controversy between the parties exceeds $75,000, exclusive of costs and interest. Accordingly, the Court has diversity jurisdiction over the parties' dispute pursuant to 28 U.S.C. § 1332.

4. There is personal jurisdiction over Defendant Jorns because it is registered to conduct business in the State of Ohio as a foreign limited liability company, Jorns has regularly transacted business with numerous Ohio businesses in representing them in their applications for ERC benefits, and therefore Jorns has a substantial connection to the State of Ohio.

5. The business relationship between SCP and Jorns was for the purpose of Jorns obtaining the benefit of SCP's referrals, many of which were/are Ohio businesses. As such, Jorns worked with those Ohio businesses that had been referred by SCP, charged them fees and commissions, and represented their interests before the Internal Revenue Service.

6. Upon information and belief, Jorns maintains an office in this judicial district, located at 4040 Embassy Parkway, Suite 310, Akron, Ohio 44333.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391 because Plaintiff is a resident of Cuyahoga County, Ohio, Defendant is registered to and, in fact, does conduct business in this District and because a substantial part of the events giving rise to the Complaint occurred in this District.

## THE EMPLOYEE RETENTION CREDIT

8. Upon information and belief, the Employee Retention Credit ("ERC") is a refundable tax credit offered by the federal government, specifically the Internal Revenue Service, to help businesses bear the costs of retaining employees during the COVID-19 pandemic. The ERC credit equals 50% of qualified wages paid in 2020 to an employee between March 12, 2020, and December 31, 2020, and equals 70% of qualified wages paid in 2021 through December 31, 2021, in an amount up to $26,000 per qualified employee. As per IRS guidelines, employers must have experienced suspended operations due to governmental orders

or significant revenue decline compared with 2019 or equivalent periods before claiming eligibility.

9. Eligible business taxpayers can claim the ERC on their amended employment tax returns during a qualifying period by filing IRS Form 941-X for each quarter for which the employer is seeking eligibility for the ERC.

10. Filing Form 941-X is a complicated process, however, requiring a certain level of expertise and experience that Jorns offers to its clients, including those referred by SCP.

## PARTIES

11. SCP is a limited liability company comprised of three individual members: Seth Severin, Kevin Chernikoff and Kyle Pisani.

12. SCP was formed for the purpose of referring business contacts to accounting firms that were managing the application of employers seeking eligibility for the ERC program.

13. Jorns advertises itself as an accounting business having expertise in obtaining ERC for eligible businesses, and that it has obtained more than $7 billion in credits recovered for its clients.

14. On Jorns' website, it states that Jorns will "help create the necessary documentation to address your eligibility for the ERC program" and provide "an amended 941-X returns (and any other documentation) to one of our third party, licensed professionals to file your ERC claim with the IRS." https://jornstax.com/services/#tax

## FACTUAL ALLEGATIONS

15. In 2020, Kyle Pisani ("Pisani"), Brad Wolkov and Michael Dyer began working together to generate leads and referrals of businesses that were potentially eligible for the ERC

3

program, and introduced those business employers to a firm that managed the ERC application process, like that done by Jorns.

16. In July 2021, at the recommendation of Brad Wolkov, and after the formation of SCP, SCP transitioned its referral business to Jorns, which by then was already in the business of working with clients applying for ERC eligibility.

17. Upon information and belief, Ryan Wolkov, the brother of Brad Wolkov, was, at all relevant times, an employee of Jorns.

18. SCP and Jorns negotiated and entered into an oral contract whereby SCP would refer businesses to Jorns to evaluate, submit the application and seek eligibility for the ERC program, in exchange for which Jorns would compensate SCP through commission payments once the businesses realized the ERC benefits.

19. Upon information and belief, the businesses that SCP referred to Jorns compensated Jorns on some combination of a fee and percentage basis, whereby those clients would remit to Jorns a percentage of the tax credits obtained through the ERC program.

20. In exchange for the referrals made by SCP to Jorns, Jorns agreed to and, in fact, did, compensate SCP with a commission based on the amount recovered by the Jorns client as a credit under the ERC program.

21. Upon information and belief, Jorns received from the businesses for which Jorns submitted ERC applications a fee ranging from 10% to 50% of the amount of the ERC realized by the client.

22. The commission that Jorns agreed to pay SCP for the referrals depended on the size of the client as an employer. If the client employed fewer than 50 employees, then Jorns would pay SCP 35% of the 2.5% of the ERC amount. For example, if the client obtained a credit

of $1,000,000, then SCP would receive payment from Jorns in the amount of $8,750 (35% of $25,000).

23. If the client referred to Jorns by SCP was eligible for the ERC and had more than 50 employees, then Jorns agreed to pay SCP 35% of 4% of the ERC. For example, if the client obtained a credit of $10,000,000, then Jorns would pay SCP $140,000 (35% of $400,000).

24. As part of the relationship between SCP and Jorns, they created and mutually maintained a spreadsheet to track the client referrals, the amount of the ERC obtained by the client, the fee earned by Jorns, and the commission owed to SCP (the "Spreadsheet").

25. As part of the relationship between SCP and Jorns for the referral business described above, SCP attended weekly conference call meetings conducted by representatives of Jorns: Amanda Westmoreland, Doug Kolker, and Ryan Wolkov.

26. During those weekly conference call meetings, SCP representatives Kyle Pisani, Casey Savelli, David Smith, and Kevin Chernikoff reviewed and confirmed with the representatives from Jorns the status of referrals, ERC applications, ERC eligibility of referrals from SCP, fees realized by Jorns from its clients, payments due by Jorns to SCP, and the actual payments made by Jorns to SCP.

27. During those weekly conference call meetings, the SCP and Jorns representatives would regularly review the Spreadsheet to confirm the status of ERC applications, ERC benefits, and commission payments.

28. These weekly conference call meetings constituted a course of conduct as to the oral contract between SCP and Jorns, the percentage of commissions due to SCP, the payments due to SCP, and Jorns' obligation to make those payments.

29. Many of the businesses and their representatives that SCP referred to Jorns for the ERC program are located in Northeast Ohio, as are their documents, records, bank accounts, and other information and data relating to their applications for ERC.

30. Jorns regularly and consistently made the commission payments due to SCP for the business generated between November 2021 and September 2022, as shown on the Spreadsheet.

31. Jorns' payments to SCP for the commissions earned for the referrals, as depicted on the Spreadsheet, shows part performance by SCP for the oral contract.

32. SCP continued to refer businesses to Jorns for the ERC program based on Jorns' promise to pay the negotiated commissions, and the commissions that Jorns actually paid to SCP through September 2022.

33. After November 15, 2022, Jorns abruptly and without notice stopped making the agreed-upon commission payments to SCP and refused to make payments that were due for SCP-based referrals that resulted in the ERC benefits obtained by the businesses referred by SCP to Jorns.

34. Upon information and belief and based on statements made by Jorns' General Counsel on August 29, 2023, Jorns diverted the payments that were due to SCP by instead paying those commissions to Brad Wolkov, for reasons completely unknown to SCP.

35. There are dozens of other referrals that SCP made to Jorns for ERC applications after October 1, 2022, for which SCP has no knowledge as to the status of those applications and ERC credits, and for which other commissions may be due by Jorns to SCP.

36. For reasons completely unknown to SCP, the payments that had been made to SCP for the referral commissions through Jorns were made by wire transfers by entities known as "Bridge My Gap" and "Kolker International."

37. At no time did SCP enter into any agreements for payment by Bridge My Gap or Kolker International.

38. Upon information and belief, Bridge My Gap and Kolker International were, at all relevant times, agents of Jorns for the purpose of compensating SCP for the commissions owed by Jorns pursuant to the parties' oral contract and course of conduct.

39. Upon information and belief, "Bridge My Gap, LLC" is a business formed under the laws of the State of Nevada and operated by Ryan Wolkov and Doug Kolker, who are both employees of Jorns.

40. Upon information and belief, "Kolker International" is a business operated by Doug Kolker, an employee of Jorns.

41. Upon information and belief, Jorns has obtained ERC benefits for approximately 15,000 applicant businesses that resulted in billions of dollars of ERC benefits, and hundreds of millions of dollars of revenue to Jorns.

42. SCP has made repeated demands on Jorns for payment of the commissions due, but Jorns has failed and refused to make those payments to SCP.

43. At the time that Jorns stopped making payments to SCP in or about October 2022, SCP was then owed commissions in the amount of $2.2 Million, for ERC benefits already received by the businesses obtaining those credits.

44. As of January 1, 2023, and upon information and belief, SCP was also entitled to additional commissions for referrals to Jorns for the ERC program, whether by SCP or its

subagents, that likely realized additional commissions in the amount of approximately $3,000,000.

45. For the referral business that SCP generated for the ERC business at Jorns from November 2021 to June 2023, the total amount believed to be due to SCP for its commissions may be in excess of $5,200,000.

**COUNT ONE**
**ACTION FOR ACCOUNTING**

46. SCP incorporates the allegations contained in the preceding allegations of the Complaint as if fully restated herein.

47. Jorns has wrongfully withheld payments due to SCP.

48. As a result of the agreements, promises, and understandings between SCP and Jorns, SCP is entitled to an accounting to determine the total amount of ERC credits obtained by Jorns for the SCP-referred clients, the amount of fees realized by Jorns from said referrals, and the total amount due by Jorns to SCP for the SCP-generated referrals of ERC benefits.

**COUNT TWO**
**BREACH OF CONTRACT**

49. SCP incorporates the allegations contained in the preceding allegations of the Complaint as if fully restated herein.

50. SCP and Jorns entered into an oral contract for the payment of commissions by Jorns to SCP in consideration of the referral of business that may be eligible for the ERC benefits.

51. SCP and Jorns had established a clear pattern and course of conduct with respect to the SCP referrals in consideration for Jorns' payment of commissions.

52. The words, deeds, and acts of SCP and Jorns established a clear and binding contract with respect to the referral of businesses to Jorns for the ERC benefit program.

53. SCP fully performed all of the conditions precedent for Jorns to pay the commissions to SCP per their oral contract.

54. The oral contract between the parties is enforceable under the doctrines of part performance and estoppel.

55. The conduct of SCP and Jorns is clearly consistent with and referable to the oral agreement alleged herein, and their conduct cannot reasonably be accounted for in any other manner than as having been done in pursuance of such agreement.

56. Jorns has breached the contract entered into between SCP and Jorns, which breach has directly caused damage to SCP.

57. SCP has been damaged by Jorns' breach of the parties' contract in an amount no less than $2.2 Million and potentially up to $5.2 Million.

## COUNT THREE
## PROMISSORY ESTOPPEL

58. SCP incorporates the allegations contained in the preceding allegations of the Complaint as if fully restated herein.

59. Jorns made promises to SCP, namely the promise to pay commissions to SCP in exchange for the referral of ERC business.

60. SCP referred such ERC business to Jorns in reliance on Jorns' promise to pay SCP for those referrals to its detriment.

61. There are a number of firms providing the same services as those by Jorns and, in fact, SCP worked with another ERC benefits firm prior to working with Jorns, and transitioned its referral business to Jorns based on Jorns' representations to SCP about the expertise and

management services provided by Jorns to SCP and Jorns' promises to compensate SCP for the businesses to be referred by SCP to Jorns.

62. SCP could have made such referrals to any one of a number of firms processing ERC applications with the IRS for businesses submitting such applications, and relied to its detriment on Jorns' promises to SCP that Jorns would remit commission payments to SCP in exchange for the referral of such businesses seeking eligibility for the ERC benefits.

63. SCP has been damaged by its reliance on Jorns' promises to its detriment, and as a result has been damaged in an amount no less than $2.2 Million and potentially up to $5.2 Million.

## COUNT FOUR
## UNJUST ENRICHMENT

64. SCP incorporates the allegations contained in the preceding allegations of the Complaint as if fully restated herein.

65. Jorns has realized a clear benefit by obtaining the revenue derived from referrals that SCP made to Jorns without compensating SCP for said referrals.

66. Jorns has full knowledge of this unearned benefit, particularly as SCP has made numerous and repeated demands for payment of the commissions due to SCP.

67. Jorns' wrongful retention of the commissions due to SCP has resulted in an unearned benefit and unjust enrichment to Jorns.

## COUNT FIVE
## CONVERSION

68. SCP incorporates the allegations contained in the preceding allegations of the Complaint as if fully restated herein.

69. Jorns has wrongfully exercised dominion and/or control over the commissions due to SCP to the exclusion of the rights of SCP, and SCP is entitled to the payment of the commissions to it.

70. Jorns has wrongfully converted SCP's funds for its own use.

71. Jorns has wrongfully withheld ownership of the commissions from SCP under a claim inconsistent with its rights.

72. Jorns' conduct has been tortious, intentional and malicious so as to justify an award of punitive damages in an amount sufficient to punish Jorns and deter others from such similar conduct, plus an award to SCP of the attorneys fees incurred in bringing this action.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff SCP Holdings, LLC hereby demands that judgment be rendered in its favor and against Defendant Jorns & Associates LLC as follows:

1. On Count One, that the Court order an accounting of all of the ERC applications and transactions undertaken by Jorns from July 2021 to present so that SPC can evaluate which of such transactions arose out of and were the result of SPC referrals and the resulting commissions due to SPC;

2. On Counts Two, Three, Four, and Five an award of compensatory damages to SCP to compensate SCP for the earned (but unpaid) commissions, in an amount between $2.2 Million and $5.2 Million;

3. On Count Four, the imposition of a constructive trust to safeguard the assets that constitute the damages to be awarded to SCP;

4. On Count Five, punitive damages and attorneys fees;

5. As to all counts, an award to SCP of its pre-judgment and post-judgment interest, costs, expenses, reasonable attorneys fees, and any and further relief, whether legal or equitable, to which it may be entitled.

          Respectfully submitted,

*/s/ Laura A. Hauser*
Laura A. Hauser (0041354)
Hauser Law LLC
3391 Bradford Road
Cleveland Heights, Ohio 44118
216.536.8810
Laura@HauserLawLLC.com
*Attorney for Plaintiff SCP Holdings, LLC*